IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DAVID EUGENE BREEZEE,                )
                                     )
                                     )
        Petitioner,                  )
                                     )
v.                                   )              No. 1:17-cv-01207-STA-jay
                                     )
GRADY PERRY,                         )
                                     )
        Respondent.                  )

---

ORDER DIRECTING CLERK TO MODIFY DOCKET,
DENYING § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

---

Petitioner David Eugene Breezee has filed a *pro se* habeas corpus petition (the "Petition"), pursuant to 28 U.S.C. § 2254. (ECF No. 1.) For the following reasons, the Petition is **DENIED**.

## BACKGROUND

In June 2010, the Benton County, Tennessee, Grand Jury returned a four-count indictment charging Breezee with the sexual abuse of his two step-daughters. (ECF No. 15-1 at 2-6.) Counts 1 and 2, which related to the younger step-daughter, D.W., charged Petitioner with, respectively, rape of a child in violation of Tenn. Code Ann. § 39-13-522(a), and incest in violation of Tenn. Code Ann. § 39-15-302(a)(1). (*Id.* at 2-3.) Regarding his eldest step-daughter, B.W., Count 3 charged him with rape in violation of Tenn. Code Ann. § 39-13-502(a)(1), and Count 4 charged him with incest. (*Id.* at 4-5.) "The trial court severed the offenses . . . involving D.W. from the offenses . . . involving B.W." *Breezee v. State*, No.

W2015-02251-CCA-R3-PC, 2017 WL 1907738, at *1 (Tenn. Crim. App. May 9, 2017) ("*Breezee IV*"), *perm. to appeal denied*, (Tenn. Sept. 22, 2017).

## I.      First Trial and Appeal

Petitioner was tried in April 2011 on the charges relating to B.W.  (ECF No. 15-2.)  At the time of the offense on February 24, 2010, the defendant shared a home with his then-wife and her children, including B.W. and D.W.  (*Id* at 89.)  B.W. testified that, on February 24, 2010, Breezee "came into her bedroom, pinned her against the wall, and put his hand down her pants and that he 'play[ed]' with her vagina, 'sticking his fingers inside [her].'"  *State v. Breezee*, No. W2011–01231–CCA–R3–CD, 2012 WL 6728345, at *4 (Tenn. Crim. App. at Jackson, Dec. 28, 2012) ("*Breezee II*"), *perm. to appeal denied*, (Tenn. May 14, 2013) (alterations in original).  She explained that during the assault "she was  texting her boyfriend with both hands while the incident occurred and that she was telling her boyfriend that she wanted it to stop."  *Id.*  The incident ended when D.W. walked into the bedroom.  *Id.*  The victim explained that she, "spoke with her sister and her sister's boyfriend immediately after the incident and that they decided to tell the victim's mother what happened" and they also "decided to tell someone at school[.]"  *Id.*

The victim acknowledged that, on the day of the offenses, she had been upset with the defendant because he had announced to the family that they were moving to another town.  *Id.*  On cross-examination, she testified "that she did not know" that D.W. and D.W.'s boyfriend "were going to tell the principal" at school about the abuse.  *Id.*  When asked about whether her neighbor, Patrick Horn, had been at her house on the evening in question, she stated that she could not remember.  *Id.*

D.W. and her boyfriend testified that they were at D.W.'s home on February 24, 2010. *Id.* at *3.  They both related that the defendant went into B.W.'s bedroom and closed the door.

*Id.* When D.W. opened the door about fifteen minutes later, both she and her boyfriend observed Breezee with his "hand down [B.W.'s] pants" while he had her pinned against the wall. *Id.* The boyfriend further testified "that he and [D.W.] spoke to [B.W.] to confirm what they saw and decided to tell someone at school the next day." *Id.*

Sergeant Ricky Pafford of the Benton County Sheriff's Department testified that Cindy Curtis, an investigator with the Benton County Department of Child Protective Services ("DCS"), contacted him about the sexual abuse of B.W. *Id.* at *1. Pafford related "that he interviewed the Defendant twice and that Ms. Curtis was present for the first interview." *Id.* At the first session, Breezee was not under arrest and Pafford's questioning related to the dynamics and routines of the family. *Id.* Pafford recounted "that the second interview was 'to the point' and that the Defendant denied the victim's allegations." *Id.* Breezee initialed the answers to a "question-and-answer statement" Pafford prepared as a recollection of their conversation. *Id.* According to the statement, as read by the officer while testifying, the defendant was asked "When you touched [the victim] on the twenty-fourth what was going through your mind[?]" *Id.* (first alteration in original). The defendant answered "nothing . . . [s]he just stood there texting [her boyfriend]." *Id.* (last alteration in original). The officer also testified that the defendant answered "I don't know what I was thinking" when asked "Did you not think when you were touching [the victim] that it would not hurt" *Id.* (alteration in original). "On cross-examination, Sergeant Pafford stated that the first interview was not recorded because he did not have access to the recording equipment and that the second interview was not recorded because the recording device he used did not record." *Id.*

Lieutenant Bryant Allen of the Benton County Sheriff's Department testified that he attended the second interview. *Id.* at *2. Allen described that interview substantially as Pafford

had recounted it.  *Id.*  Allen also added that "he asked the Defendant why he touched the victim and that the Defendant said he did not know why, dropped his head, and began to cry."  *Id.*  "On cross-examination, [the officer] testified that he did not know why" his question was not "included in the [written] statement."  *Id.*  He explained that the interview was not recorded because it was a "non-custodial interview."  *Id.*

 "Cindy Curtis . . . testified that she received information about" B.W.'s allegations of abuse.  *Id.*  She recalled that she attended law enforcement's first interview of the defendant "and the last part of the second interview."  *Id.*  While at the "second interview, she heard Sergeant Pafford ask the Defendant why he did it and heard the Defendant respond that he did not know."  *Id.*

Shane Penn testified that he was Breezee's "cellmate for two to three months."  *Id.* at *3.  He explained that the defendant "admitted touching the victim and that the Defendant told him the victim wanted the Defendant to touch her."  *Id.*  On cross-examination, Penn acknowledged that he reported the confession during a meeting with Cindy Curtis at which he was trying to regain custody of his children.  *Id.*

Johnny Sterling, who had been incarcerated with Breezee, testified for the defense.  *Id.* at *5.  Sterling recounted "that he never heard the Defendant admit doing anything to the victim."  *Id.*  He also related that an inmate who has committed a sexual offense against a minor had a disincentive to discuss the charges with other inmates because such an offender was likely to be "'killed' in jail."  *Id.*

Patrick Horn testified that he had been "at the Defendant's home the evening of the incident and that the victim was 'crying and carrying on.'"  *Id.*  He reported that B.W.'s "fits became rukus enough that [the Defendant] needed to go handle it and he did."  *Id.* (alteration in

original).  He recalled that Breezee "went into [B.W.'s] bedroom," but was only there for "a few minutes."  *Id.*

The jury returned guilty verdicts on the rape and incest charges.  *Id.* at *1.  The trial court merged the incest conviction with the rape conviction, and sentenced Petitioner to ten years' incarceration.  *Id.*  On appeal, Breezee argued "that the evidence [was] insufficient to sustain his convictions and that he erroneously received more than the minimum sentence of eight years because the trial court" improperly applied state law.  *Id.*  The Tennessee Court of Criminal Appeals ("TCCA") affirmed the rape conviction and sentence, "reverse[d] the trial court's merger of the incest conviction into the rape conviction, reinstate[d] the incest conviction, and remand[ed] for sentencing as to that conviction."  *Id.*

## II.    Second Trial and Appeal

Petitioner was tried in August 2011 on the charges relating to D.W.  (ECF No. 15-14.)  The victim "testified that one night in 2007, when she was twelve years old, she awoke with her shorts and undergarment on the floor and the Petitioner's tongue in her vagina."  *Breezee IV*, 2017 WL 1907738, at *1.  Although she resisted, Petitioner did not stop until D.W.'s "mother walked in the room."  *Id.*  On cross-examination, the victim recalled that the defendant "would beat her every night while her mother was at work and that the beatings continued for three or four years."  *Id.*  She also "acknowledged that she had a boyfriend at the time of the sexual abuse and that" Breezee "wanted [her] boyfriend to leave, which upset [her]."  *State v. Breezee*, No. W2011-02186-CCA-R3-CD, 2012 WL 6717308, at *4 (Tenn. Crim. App. Dec. 26, 2012) (*Breezee I*), *perm. to appeal denied*, (Tenn. May 14, 2013).

The victim's mother confirmed during her testimony that she "walked in on the Petitioner's performing oral sex on D.W."  *Breezee IV*, 2017 WL 1907738, at *1.  On cross-

examination, she acknowledged that the victim "was upset" that the family was planning to move to another town, as she wanted to remain living near her boyfriend. *BreezeeII*, 2012 WL 6717308, at *3. She also affirmed that Breezee "was a truck driver in 2007" and that she had spoken to DCS in 2009 but did not reveal that the defendant had "perform[ed] oral sex on the victim in 2007." *Id.* She "acknowledged . . . that she 'mess[ed] around' with William Tindall Todd, a registered sex offender," during the time the defendant "was working away from home." *Id.*

Sergeant Pafford testified that he interviewed the defendant twice. *Id.* at *1. At the first interview, the purpose of which "was to learn about the dynamics of the victim's family," Breezee denied abusing D.W. and "acted surprised, shocked" at the allegations. *Id.* The officer further testified that he "wrote out questions for the [defendant] and wrote the [defendant's] answers." *Id.* When Breezee was asked "Did you think when you were touching the girl that it would not hurt her[?]" he answered "I don't know what I was thinking." *Id.* (alteration in original). When asked "You understand that what you done was breaking the law[?]" he answered "Yes. Touching a kid is breaking the law." *Id.* When the interview ended, the defendant "stated 'I don't know why I touched the girl.'" [1] *Id.*

Lieutenant Allen testified that he attended the second interview. *Id.* at *2. He explained that he "asked the [defendant] why he had touched the victim." *Id.* In response, Breezee "put his head down and stated, 'I don't know why I touched the girl.'" *Id.* The defendant "then put his head in his hands and sobbed." *Id.* On cross-examination, the officer stated that he did not

---

[1]  Pafford's interviews centered around the allegations regarding *both* D.W. and B.W. However, because the cases were severed, the officer did not reference the defendant's statements regarding B.W. during his testimony at the second trial. The judge at that trial rejected defense counsel's argument that several of his client's answers should be redacted from the written statement because they might have applied only to B.W., not D.W. (*See* ECF No. 15-14 at 22-23; *compare* ECF No. 15-3 at 6-7 *with* ECF No. 15-15 at 2-5.)

know why Pafford had not written down the question and Breezee's answer, but he should have. *Id.*

Cindy Curtis testified that "she received a report about the victim on February 25, 2010," and that she was present when Sergeant Pafford first interviewed the defendant. *Id.* She recalled that Breezee did not admit during the interview that he abused D.W. *Id.* The witness did not attend the defendant's second interview with Pafford but did speak with the defendant afterward "and he admitted that he had molested the victim." *Id.* He expressed to her that he "did not know why he had done that to [the victim]." *Id.* (alteration in original).

Shane Penn, Breezee's former cellmate, testified that he overheard the defendant talking to another inmate about the abuse of D.W. *Id.* He recalled that Breezee said he "went to the couch, climbed up with her, pinned her in, [and] started doing it. The oral." *Id.* (alteration in original). "Penn said he later assaulted the [defendant] in jail '[f]or what he did' to the victim." *Id.* (second alteration in original). The witness acknowledged that he told Cindy Curtis about Breezee's confession after he was released from jail, and that he subsequently regained custody of his children. *Id.*

Johnny Sterling testified for the defense that he and the defendant had been in jail at the same time "and that he never heard [Breezee] talk about [his] case." *Id.* at *4. He explained "that inmates charged with sex offenses were perceived '[v]ery badly' by other inmates and that sex offenders did not discuss their cases because '[i]t's a sure way to get killed.'" *Id.* (alterations in original). On cross-examination, he conceded that he had not been incarcerated with the defendant "the entire time" the defendant was in jail and "that he did not know what [Breezee] said during the time he was not in jail with [him]." *Id.*

The jury convicted Petitioner of rape of a child and incest. *Id.* The incest conviction was merged into the rape conviction and Breezee was sentenced to twenty-five years' incarceration. *Id.* On appeal, he argued "that the evidence [was] insufficient to support the convictions" and "that the trial court erred by ordering him to serve his . . . sentence consecutively to a prior sentence." *Id.* at *5, 7. The TCCA rejected the arguments and "affirmed his conviction and sentence for rape of a child in count one, reinstated his incest conviction in count two, and remanded the case to the trial court for resentencing as to both counts." *Breezee IV*, 2017 WL1907738, at *1.

## III.   Resentencing and Appeal

In a consolidated hearing on remand from both direct appeals, the trial court resentenced the defendant to "a total effective sentence of thirty-two years." *Id.* at *2. On appeal, the TCCA affirmed the sentences. *Breezee III*, 2013 WL 5745677, at * 4.

## IV.   State Post-conviction Proceedings

Breezee filed *pro se* post-conviction petitions in state court. (ECF Nos. 15-30 at 7-90.) Appointed counsel filed an amended petition related to both trials. (*Id.* at 103-113.) Following an evidentiary hearing, the post-conviction trial court denied relief. (*Id.* at 128-30.) The TCCA affirmed, and the Tennessee Supreme Court denied permission to appeal. *See Breezee IV*, 2017 WL 1907738, at *1, 7.

## DISCUSSION

On November 6, 2017, Breezee filed the Petition and a supporting memorandum. (ECF No. 1; ECF No. 1-1.) He asserts that the evidence in both trials was insufficient to convict him of rape, rape of a child, and incest (Claim 1), the sentences are excessive under state law (Claim 2A) and under federal law (Claim 2B), and that he has newly discovered evidence that his ex-

wife had feelings for D.W.'s father and that B.W. was "bribed" to testify against him (Claim 3). Petitioner also claims that his defense attorney provided ineffective assistance by failing to argue that a comment by the prosecutor improperly influenced the jury (Claim 4A) and failing to call two witness at trial (Claim 4B).  Respondent Grady Perry[2] filed the state court record (ECF No. 15) and a response to the Petition (ECF No. 16), arguing that the claims are, variously, without merit or procedurally defaulted.  Petitioner filed a reply, insisting that the Court should review his procedurally defaulted claims.  (ECF No. 17.)

## I.    Legal Standards

### A.  Federal Habeas Review

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See* 28 U.S.C. § 2254.  Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts.  28 U.S.C. § 2254(d).  In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or . . . 'involved an unreasonable application of' such law; or . . . 'was based on an unreasonable determination of the facts' in light of the record before the state court."  *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (citations omitted)).

---

[2]  The Clerk is **DIRECTED** to modify the docket to reflect Grady Perry as Respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004); Fed. R. Civ. P. 25(d).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

A petitioner will be entitled to federal court review of the merits of a claim that was procedurally defaulted is he demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Id.* at 750. The ineffectiveness of post-conviction trial counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)).

A petitioner may also overcome his procedural defaults by establishing a "gateway" claim of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 315 (1995). To open the gateway, a prisoner must "support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

physical evidence—that was not presented at trial." *Id.* at 324. He must also show that, in light of the new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Id.* at 327.

### B. Sufficiency of the Evidence

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), provides the federal due process standard for evidentiary sufficiency in criminal cases. *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (holding *Jackson* applies to sufficiency-of-the-evidence claims on habeas review under § 2254(d)). In *Jackson*, the Supreme Court announced that "the relevant question" "on review of the sufficiency of the evidence to support a criminal conviction," is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19 (emphasis in original).

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Id.* at 319. *See also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) (holding that, under *Jackson*, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."). *Jackson*'s evidence-sufficiency standard may be met with circumstantial evidence. *See Desert Palace, Inc., v. Costa*, 539 U.S. 9, 100 (2003) ("[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required."); *see also United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010) ("Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.").

The AEDPA adds a layer of deference to *Jackson's* already deferential standard.  By virtue of the AEDPA's command that federal habeas relief may issue only if the state court's decision is "contrary to" controlling federal law or "based on an unreasonable application" of the controlling federal law, 28 U.S.C. § 2254(d)(1)-(2), a state court determination that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference" by the federal habeas court.  *Coleman*, 566 U.S. at 656.

### C.  Ineffective Assistance of Counsel

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984).  To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense."  *Id.* at 687.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id.* at 689 (internal quotation marks and citation omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options[.]"  *Strickland*, 466 U.S. at 690.  "[S]trategic choices made after less than complete investigation are reasonable precisely to the

extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

## II.  Claim 1: Insufficiency of the Evidence

Petitioner asserts in Claim 1 that the TCCA's determinations that the evidence at his trials were sufficient to support his convictions are unreasonable. Regarding the trial relating to B.W., he posits that the victim's incriminating testimony should not be believed because she had a motive to lie. Specifically, she was angry at Breezee when he announced the family was moving

because she did not want to leave her boyfriend.  (ECF No. 15-7 at 13.) [3]  Petitioner also asserts that Patrick Horn's testimony contradicting the accounts provided by the victim, her sister, and her sister's boyfriend, together with inconsistencies in their testimonies, creates reasonable doubt as to his guilt.  (*Id.* at 13-14.)  He also challenges Shane Penn's testimony on the grounds that Penn "had a grudge against him" and was motivated to lie to DCS about Breezee's jailhouse confession by his desire to regain custody of his children.  (*Id.* at 15.)  Petitioner further contends that his confession to law enforcement was "highly suspect" because "[t]here [was] no way to accurately know the context of the questions and answers without an accurate recording" of the second interview with law enforcement.  (*Id.*)

As for the trial involving the abuse of D.W., Petitioner again posits that the evidence relating to the second interview rendered his reported statements at the interview not credible.  Thus, he asserts, his confession that he abused D.W. is suspect.  (ECF No. 15-17 at 12.)  He also argues that the evidence was insufficient to convict him of the abuse of D.W., which occurred in 2007, because no charges were brought against him when inquiries were made by DCS in 2009.  (*Id.*)  He further maintains that D.W.'s testimony was contradicted by other evidence and that she was motivated to lie because she did not want to move.  (*Id.* at 12, 14.)  Petitioner challenges Penn's testimony on the same grounds he advances regarding that witness's testimony in the other trial.  (*Id.* at 13.)  Lastly, Petitioner argues that the testimony of D.W.'s mother was "very contradictory and cannot be credible" because she had an affair with a registered sex offender and did not provide a plausible reason for not reporting the 2007 abuse.  (*Id.* at 14.)

---

[3]  Throughout the Petition and his supporting memorandum, Breezee incorporates by reference the arguments he raised in his direct appeals, appeal after remand, and post-conviction appeal.  Therefore, the Court's recitation of his arguments in the present matter are taken primarily from his state appellate briefs.

Respondent argues that the TCCA's evidence-sufficiency determinations easily survive federal habeas review.  The Court agrees.

As relevant here, "rape" under Tennessee law is the "unlawful penetration of a victim by the defendant . . . accompanied by . . . [f]orce or coercion . . . [or] without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent."  *Breezee II*, 2012 WL 6728345, at *6 (alterations in original) (quoting Tenn. Code Ann. § 39-13-503(a)(1), (2)).  "Rape of a child" is defined as the "unlawful sexual penetration of a victim by the defendant . . . if the victim is more than three (3) years of age but less than thirteen (13) years of age."  *Breezee I*, 2012 WL 6717308, at *5 (alterations in original) (quoting Tenn. Code Ann. § 39-13-522(a)).  A person commits "incest" when he "engages in sexual penetration . . . with a person, knowing the person to be, without regard to legitimacy . . . [t]he [defendant's] stepchild[.]"  *Id.* (alterations in original) (quoting § 39-13-302(a)(1)).  "'Sexual penetration' means sexual intercourse, cunnilingus, . . . or any other intrusion, however slight, of any part of a person's body[.]"  *Id.* (quoting Tenn. Code Ann. § 39-13- 501(7)).

On appeal from Breezee's trial for the abuse of B.W., the TCCA articulated and applied *Jackson*'s evidence-sufficiency standards.  *Breezee II*, 2012 WL 6728345, at *5.  Upon review of the proofs submitted at trial, the court determined that the evidence, when viewed "[i]n the light most favorable to the State, . . . show[ed] that

> the Defendant entered the victim's bedroom, pinned her against the wall, and put his fingers inside her vagina. The victim stated that she could not get away from him and that she told him to stop. She also identified the Defendant as her stepfather. The jury rejected the Defendant's claim that his statement was suspect because it was not recorded. The jury's guilty verdict, approved by the trial court, credits the testimony of the victim and other State witnesses and accepts the Defendant's admissions.

*Id.* at *6.  Based on this evidence, the court concluded that a rational juror could have found the defendant guilty beyond a reasonable doubt.  *Id.*

On appeal from the trial relating to the abuse of D.W., the TCCA again articulated and applied *Jackson*'s standards.  *Breezee I*, 2012 WL 6717308, at *5.  The court found that the evidence, viewed favorably to the State, demonstrated

> that on the night of February 12, 2007, the victim woke up with the appellant's tongue in her vagina. The victim's mother witnessed the incident. Sergeant Pafford and Lieutenant Allen testified that the appellant told them during his second interview, "I don't know why I touched the girl." Cendy Curtis said that she spoke with the appellant after his second interview and that he told her he did not know "why he had done that" to the victim. As stated previously, the credibility of the witnesses is within the purview of the jury. *See State v. Millsaps,* 30 S.W.3d 364, 368 (Tenn.Crim.App.2000) (stating that "the weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the trier[ ] of fact"). In the instant case, the jury obviously resolved the issue of witness credibility in favor of the State.

*Id.* at *5.  The court therefore concluded that "the evidence [was] sufficient to support the convictions."  *Id.*

The TCCA's decisions are not contrary to clearly established Supreme Court law because the court in both cases correctly identified *Jackson*'s standards and applied them to the facts adduced at trial.  *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The decisions are also not based on unreasonable determinations of the facts or unreasonable applications of *Jackson*'s standards to the facts.  The state-court records fully support the TCCA's factual findings about the proofs adduced at both trials and Petitioner does not identify any clear and convincing evidence to undermine them.  In light of those proofs, the

court's conclusions that the evidence in each trial was sufficient to support the convictions were not unreasonable.

Petitioner's contentions to the contrary are unavailing. Each of his proffered reasons for why he believes the TCCA's decisions represent unreasonable applications of clearly established Supreme Court law are simply challenges to the credibility of the witnesses. Under *Jackson*, however, it is the role of the jury to resolve conflicts in the evidence and make credibility determinations. *See Jackson*, 443 U.S. at 319. The juries in Petitioner's cases implicitly credited the victims' and the eyewitnesses' descriptions of the abuse. Consistent with *Jackson*'s precepts, the TCCA refused to disturb the juries' credibility determinations, thus properly giving "full play" to the role of the juries as fact-finders. *Id.*

For all of these reasons, the TCCA's determinations that the evidence was sufficient to support the convictions pass muster under the AEDPA. Claim 1 is **DENIED**.

## III.    **Claim 2A: Excessive Sentence Under State Law**

Petitioner asserts in Claim 2A that the TCCA unreasonably rejected his argument that the total effective sentence imposed after remand is excessive under state law. (ECF No. 1-1 at 4; ECF No. 15-25 at 7-8.) Respondent argues that the claim is not cognizable on federal habeas review.

It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). That rule extends to alleged state-law sentencing errors. *See Howard* v. White, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016) ("[E]rrors in the application of state sentencing guidelines . . . cannot

independently support habeas relief[.]").  Because Claim 2A is premised solely on Tennessee sentencing law, the claim is non-cognizable and is, therefore, **DISMISSED**.

## IV.     Claim 2B: Excessive Sentence Under Federal Law

Petitioner asserts that his total effective sentence of thirty-two years is excessive in violation of the Eighth Amendment's prohibition of cruel and unusual punishments.  (ECF No. 1-1 at 4-5.)  He argues, specifically, that his Tennessee sentence is excessive in comparison to what would obtain under the United States Sentencing Commission *Guidelines Manual* (the "Federal Sentencing Guidelines") for "the same criminal acts."  (ECF No. 1-1 at 5.)  Respondent maintains that Petitioner procedurally defaulted the claim.

Petitioner does not deny, and the record reveals, that he did not present the Eighth Amendment issue to the sentencing court or to the TCCA in his appeal following resentencing. (*See* ECF No. 15-25 at 7-8 (appellate brief raising only state law sentencing issue).)  He insists, however, that the default should be excused because his trial counsel was ineffective for failing to make the argument at sentencing and that, under *Martinez*, his post-conviction counsel was ineffective for failing to assert the trial-counsel-ineffective-assistance claim.  (ECF No. 17 at 2.)

"[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted [although] that procedural default may . . . *itself* be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to *that* claim."  *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (emphasis in original).  As discussed earlier, *Martinez* holds that post-conviction counsel's ineffective assistance in failing to raise a "substantial" trial-counsel-ineffective-assistance claim may excuse the procedural default.  *See Martinez*, 566 U.S. at 14.  A claim is substantial if it has "some merit."  *Id.*

19

In the present matter, a claim that trial counsel provided ineffective assistance for failing to challenge Petitioner's sentence as excessive on the grounds alleged in the Petition is not substantial. More to the point, such a claim does not have even "some merit."

The Eighth Amendment's prohibition of cruel and unusual punishments reaches "only 'extreme sentences that are grossly disproportionate to the crime.'" *United States v. LaFond*, 692 F. App'x 242, 244 (6th Cir. 2017) (quoting *United States v. Graham*, 622 F.3d 445, 452 (6th Cir. 2010)). A court reviewing a sentence "should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." *Solem v. Helm*, 463 U.S. 277, 290 (1983). Accordingly, "outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." *Id.* at 289-90 (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)) (alterations omitted).

A sentence that falls "within the maximum set by statute [is] generally" not one of those rare cases. *United States v. Layne,* 324 F.3d 464, 474 (6th Cir. 2003) (quoting *Austin,* 213 F.3d at 302). What is more, a comparison of a state sentence to the sentence that might result in federal court under the Federal Sentencing Guidelines amounts to an "inter-jurisdiction comparison[]" that bears little on a determination of whether a state sentence is excessive for purposes of the Eighth Amendment. *Berger v. Ryan*, No. CV-09-2689-PHX-DGC, 2011 WL 3875853, at *3 (D. Ariz. Sept. 2, 2011), *aff'd sub nom. Berger v. Horne*, 525 F. App'x 543 (9th Cir. 2013) (citing *Harmelin v. Michigan,* 501 U.S. 957, 1000 (1991) (Kennedy, J., concurring) (the fact that "a State has the most severe punishment for a particular crime does not by itself render the punishment grossly disproportionate")).

For three reasons, Breezee cannot show that his total effective term of thirty-two years' imprisonment is grossly disproportionate to his crimes of rape, rape of a child, and incest.  First, the record reveals that he received a sentence below the statutory maximum for each offense. (*See* ECF No. 15-24 at 8, 14, 18; ECF No. 15-25 at 6.)  Second, the fact that federal sentencing varies from sentencing under Tennessee law is irrelevant.  *See Berger*, 2011 WL 3875853, at *3 (rejecting petitioner's reliance on the Federal Sentencing Guidelines to challenge his Arizona sentence as excessive).  Third, even if federal sentencing law was relevant here, federal appellate courts, including the Sixth Circuit, have held that thirty-year federal sentences for convictions relating to intended or completed sexual acts with minors pass muster under the Eighth Amendment.  *See e.g.*, *United States v. LaFond*, 692 F. App'x 242, 243 (6th Cir. 2017) (holding "thirty-year mandatory minimum term of imprisonment for engaging in a sexual act with a person who has not attained the age of twelve years in a territorial jurisdiction of the United States in violation of 18 U.S.C. § 2241(c)" was not disproportionate to the crime); *United States v. Farley*, 607 F.3d 1294, 1343 (11th Cir. 2010) (thirty-year mandatory minimum sentence for crossing a state line with intent to engage in a sexual act with a person under the age of twelve, in violation of 18 U.S.C. § 2241(c), did not violate the Eighth Amendment).

Accordingly, Petitioner has failed to establish cause and prejudice to excuse the procedural default.  Claim 2B is therefore **DISMISSED**.

## V.   Claim 3: Newly Discovered Evidence

Petitioner asserts that "[n]ewly discovered evidence has come to light, which supports a conclusion that the State bribed the witnesses in Petitioner's case to falsely testify against Petitioner and to falsely accuse him of sexual abuse in exchange for a monetary reward."  (ECF No. 1-1 at 5.)  In support, he relies on his mother's post-conviction hearing testimony.  Barbara Parker testified, in part, that, "after the Petitioner's trials," she "went through the belongings" in

21

a truck owned by D.W.'s father and discovered two letters. *Breezee IV*, 2017 WL 1907738. at *2. In the first letter, Petitioner's ex-wife professed her love to D.W.'s father while she was married to Petitioner. *Id.* The second letter, "which she assumed was from the State, stated that D.W. was paid from the 'Victim's Fund' before the Petitioner's trials." *Id.*

Respondent acknowledges that Petitioner raised the claim in his post-conviction appeal but argues that the TCCA's application of a state procedural bar renders the claim procedurally defaulted. Breezee maintains that post-conviction counsel's failure, at the post-conviction trial level, to properly raise the claim to avoid the state procedural bar is cause to excuse the default pursuant to *Martinez*, 566 U.S. at 14. (ECF No. 1-1 at 6-7; ECF No. 17 at 2.) He argues, specifically, that post-conviction counsel was ineffective for failing to properly present the issue to the state court as an error coram nobis claim. (ECF No. 1-1 at 6-7.) Petitioner's argument is not well-taken.

In refusing to hear Petitioner's claim that he had newly discovered evidence, the TCCA found that the argument was not raised by way of a petition for writ of error coram nobis and was, thus, waived through Petitioner's failure to properly present it to the court below. *Breezee IV*, 2017 WL 1907738, at *6 (relying on *Brown v. State*, No. M2013-00825-CCA-R3-PC, 2014 WL 5780718, at *17 (Tenn. Crim. Appl. Nov. 6, 2014) (holding, in part, that the "post-conviction court properly denied post-conviction relief because the Petitioner . . . waived any claim pursuant to a writ of error coram nobis" by failing to properly present it to the court below)). Citing Tennessee Rule of Appellate Procedure 36(a), the TCCA also found that Breezee's failure to "introduce the original letters into evidence at the post-conviction hearing" contributed to the waiver. *Id.* (citing Tenn. R. App. P. 36(a)).

The waiver rule on which the TCCA relied provides that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). The rule is an independent and adequate state procedural ground that bars federal habeas review.[4]  *See Hugueley v. Westbrooks*, No. 09-1181-JDB-EGB, 2017 WL 3325008, at *23 (W.D. Tenn. Aug. 3, 2017*), aff'd sub nom. Hugueley v. Mays*, 964 F.3d 489 (6th Cir. 2020) ("The waiver provision under Tennessee Rule of Appellate Procedure 36(a) presents an independent and adequate state procedural ground to bar habeas review[.]"). The claim is, thus, procedurally defaulted.

Petitioner's cause and prejudice argument—*i.e.*, that post-conviction counsel's alleged ineffective assistance in failing to properly present the issue as an error coram nobis claim should lift the bar—is unavailing. (ECF No. 1-1 at 6.) As the Supreme Court in *Coleman* made clear, "during postconviction proceedings, . . . the general rule is that ineffective assistance of counsel cannot establish cause to excuse a procedural default because there is no constitutional right to an attorney in such proceedings." *Young v. Westbrooks*, 702 F. App'x 255, 260 (6th Cir. 2017) (citing *Coleman*, 501 U.S. at 754). "Instead, petitioners are forced to 'bear the risk' of any attorney errors that may occur during collateral review." *Id.* (quoting *Coleman*, 501 U.S. at 753). To the extent Breezee seems to assert that *Martinez*'s narrow exception to *Coleman*'s rule rescues his claim, he is mistaken. As the Sixth Circuit has clarified, *Martinez* only applies to the

---

[4]  To the extent Petitioner asserts that "the Tennessee Court of Criminal Appeals erred when it found that the lower Court did not err when it failed to treat Petitioner's newly discovered evidence claim as an Error Coram Nobis claim," (ECF No. 1-1 at 6), he challenges the TCCA's decision on a state-law ground. In that respect, the claim is not cognizable in federal habeas. *See Estelle*, 502 U.S. at 67.

procedural default of a substantial ineffective-assistance-of-trial-counsel claim.  *Id.* at 268.

Claim 3, which alleges the existence of newly discovered evidence, is not such a claim.[5]

Because Petitioner has not established cause and prejudice to excuse the procedural

default, the claim is not properly before the Court.  Claim 3 is therefore **DISMISSED**.

## VI.   Claim 4A: Ineffective Assistance Regarding Prosecutor's Comment

Petitioner asserts in Claim 4A that the TCCA unreasonably concluded that counsel was

not ineffective for failing to argue that the prosecutor's alleged comment about Petitioner's guilt

"exposed" the jury to an "improper outside influence."  *Breezee IV*, 2017 WL 1907738, at * 4.

(*See also* ECF No. 1-1 at 7; ECF No. 15-32 at 29.)   Respondent acknowledges that Breezee

exhausted the claim through the state-court system, but he maintains that the TCCA's decision

was not unreasonable.  The court agrees.

At the post-conviction hearing, "John R. Breezee, Sr., the Petitioner's father, testified

that," while the jurors were on their way to the jury room for deliberations, they walked past the

prosecutor while he uttered "Well, we need a guilty verdict here or nobody is going home

tonight."  *Breezee IV*, 2017 WL 1907738, at *3.  He stated that he told his son's attorney about

the incident.  *Id.*

---

[5]   Petitioner has not asserted a gateway claim of actual innocence to lift the procedural bar.  *See Schlup*, 513 U.S. at 315.   But even if he had, a gateway claim would be without merit. The new evidence, which might have served to undermine the credibility of witnesses had it been submitted to the jury, would not have established Petitioner's "factual innocence."  *Paffhousen v. Grayson*, 238 F.3d 423 (6th Cir. 2000) (Table) ("While these affidavits clearly raise questions about the credibility and motivation of the victim and her parents, they do not establish [petitioner's] factual innocence of the crimes and, therefore, are insufficient to permit review of his [procedurally defaulted] claims.")

On cross-examination, the witness was asked whether it was possible the assistant district attorney was talking to his staff and not the jury.  *Id.*  Breezee, Sr., responded "No, because a couple of the jurors said, 'Oh, we've got to do something, because we need to go home tonight.'"  *Id.*  He also stated "that four or five other people also heard the prosecutor's statement," but he could only name one of those individuals.  *Id.*  At no time during his testimony did the witness identify at which of his son's two trials the incident took place.  *Id.* at *5.  The state did not call the prosecutor to rebut the father's testimony.  *Id.*

The post-conviction trial court denied the claim in a written order, holding that counsel did not provide ineffective assistance.  (ECF No. 15-30 at 128-29.)  The court "stated that it was skeptical of the testimony by the Petitioner's parents 'due to the relationship and possible bias on behalf of the [P]etitioner.'"  *Breezee IV*, 2017 WL 1907738, at *4.  The court also "found 'absolutely no evidence of jury misconduct' and that, in any event, the proof at the trials was 'overwhelming.'"  *Id.*

On appeal, Petitioner "assert[ed] that because the State failed to present trial counsel at the hearing, 'he successfully established that the Prosecutor made an improper comment to the jury' and that his case was prejudiced by the improper comment."  *Id.* at *5.  "The State respond[ed] that the post-conviction court found [the father's] testimony about the prosecutor's comment to the jury not credible and that it was the Petitioner's responsibility to have defense counsel testify at the evidentiary hearing."  *Id.*

The TCCA identified and applied *Strickland*'s standards to the record before it and found that counsel did not render ineffective assistance.  *Id.* at *4-5.  Although "perplexed that the State failed to call trial counsel to testify," the court nevertheless refused to disturb the lower court's implicit determination that the father was not credible:

[E]ven without trial counsel's testimony at the post-conviction evidentiary hearing to contradict the Petitioner's claim of outside influence, the Petitioner has failed to establish by clear and convincing evidence that he is entitled to relief. In the order denying the petition, the post-conviction court found "absolutely no evidence of jury misconduct." Moreover, the court found that the evidence against the Petitioner was overwhelming. Thus, the Petitioner did not establish deficient performance or prejudice. During oral arguments, post-conviction counsel asserted that the post-conviction court improperly found the Petitioner's father not credible based solely on the witness's familial relationship. We disagree. While the court stated that it was considering Mr. Breezee's testimony "with skepticism" due to his relationship with the Petitioner, the court did not make a blanket determination regarding his credibility. The court then found Mr. Breezee's testimony about the prosecutor's comment to the jury not credible. We note that although the Petitioner claims the prosecutor made the statement during the April 2011 trial, Mr. Breezee did not say when he heard the statement. We conclude that the Petitioner is not entitled to relief.

*Id.* at *5.

The Sixth Amendment "right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961); *see also Smith v. Phillips,* 455 U.S. 209, 217 (1982) ("Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."). A defense attorney's "failure to object to the prosecution's attempt to improperly influence the jury can amount to ineffective assistance of counsel." *Davidson v. Lebo*, No. 3:16-CV-1334, 2018 WL 4405576, at *9 (M.D. Tenn. Sept. 17, 2018) (citing *Girts v. Yanai*, 501 F.3d 743, 757 (6th Cir. 2007) (finding trial counsel deficient where "trial counsel's failure to object allowed the prosecutor's improper and prejudicial statements to reach the jury uncontested and without the proper admonition from the trial court"); *Hodge v. Hurley*, 426 F.3d 368, 385–86 (6th Cir. 2005) (concluding that "trial counsel's failure to object to any aspect of the prosecutor's egregiously improper closing argument was objectively unreasonable" where prosecutor "comment[ed] on witness credibility and made derogatory statements"); *Gravley v.*

*Mills*, 87 F.3d 779, 785 (6th Cir. 1996) (finding counsel "incompeten[t] [for] her failure to object to very serious instances of prosecutorial misconduct" where the prosecution "was continually making improper comments concerning [petitioner's] post-arrest silence").

The TCCA's decision to reject Petitioner's claim of attorney-ineffective-assistance is not contrary to clearly established Supreme Court law. As indicated above, the appellate court correctly identified *Strickland*'s standards and applied them to the facts adduced at the post-conviction hearing. *See Williams*, 529 U.S. at 406.

The decision is also not based on unreasonable determinations of the facts. First, the TCCA's finding that no evidence was submitted at the post-conviction hearing to establish at which of the two trials the comment was allegedly uttered is supported by the post-conviction hearing transcript, which shows that no such explanation was provided by Petitioner's father. (*See* ECF No. 15-31 at 7-27.) Second, Petitioner has not identified clear and convincing evidence to contradict the court's finding that his father was not credible. *See McMullan v. Booker*, 761 F.3d 662, 671 (6th Cir. 2014) ("[F]act-based determination[s] subject to scrutiny under § 2254(d)(2)" include "basic, primary, or historical facts: facts in the sense of a recital of external events *and the credibility of their narrators*.") (emphasis added) (in second quote quoting *Thompson v. Keohane,* 516 U.S. 99, 110 (1995)). The post-conviction trial court was in the best position to assess the witness's demeanor and the circumstances which might suggest that he was biased. This Court, sitting in federal habeas, will not disturb the TCCA's own refusal to disrupt the lower court's implicit credibility determination. *See Rice v. Collins*, 546 U.S. 333, 334-35 (2006) ("Reasonable minds reviewing the record might disagree about [a witness's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

Based on these factual findings, the TCCA did not unreasonably conclude that there was no deficient performance on counsel's part because there was no credible evidence of an improper comment. In addition, the record supports the state court's ruling that Petitioner was not prejudiced by counsel's failure to raise the issue to the trial judge because in both trials the evidence of guilt was overwhelming. *Id.* Both victims testified that they were abused by the defendant and both instances of abuse were observed by others, whose testimonies substantially corroborated the victims' accounts. "In light of the overwhelming evidence of guilt," Breezee "was not prejudiced by trial counsel's failure to object to the [prosecutor's] alleged" improper comment. *Dickens v. Chapman*, No. 2:17-CV-11560, 2019 WL 3456883, at *12 (E.D. Mich. July 31, 2019), *cert. of appealability denied*, No. 19-1945, 2020 WL 832900 (6th Cir. Jan. 15, 2020) (state court's rejection of petitioner's claim that counsel was ineffective for failing to object to prosecutor's alleged improper comment was not unreasonable, where substantial evidence of guilt precluded a finding of prejudice).

For these reasons, the TCCA's decision was not contrary to clearly established Supreme Court law, based on unreasonable factual determinations, or the result of an unreasonable application of clearly established Supreme Court law to the facts. Claim 4A is **DISMISSED**.

## VII.   Claim 4B: Ineffective Assistance Regarding Witnesses

Petitioner asserts that his trial counsel provided ineffective assistance by failing to call his friend Ronnie Quillen as a witness at both trials and his mother, Barbara Parker, as a witness at the trial relating to the abuse of D.W. Respondent argues that the claim is procedurally defaulted. Petitioner does not deny that he procedurally defaulted the claim but insists that his post-conviction counsel's failure to present it to the post-conviction trial court excuses the default. Petitioner's argument is not well-taken.

As discussed earlier, Parker testified at the post-conviction hearing about the two letters she found in the vehicle belonging to D.W.'s biological father. *Breezee IV*, 2017 WL 1907738, at *2. She also testified that her son "'had a lot of out of town jobs' . . . and . . . was not home every night as D.W. had claimed at trial." *Id.* at *3. "She acknowledged . . . that she was at the Petitioner's home on the day of one of the alleged crimes and that the Petitioner was there." *Id.* On cross-examination, she admitted that, "if something happened after [she] left, [she] wouldn't be able to know one way or another." (ECF No. 15-31 at 15.) After her testimony concluded, the post-conviction trial judge "specifically asked post-conviction counsel . . . if he was alleging that Ms. Parker should have testified and . . . counsel said no." *Breezee IV,* 2017 WL 1907738, at *5.

Quillen testified at the post-conviction hearing "that he had been friends with the Petitioner for about twenty-five years and that he lived with the Petitioner and the victims' mother 'on several different occasions' for six or eight years." *Id.* at *3. He explained "that the victims' mother was 'always cheating' on the Petitioner, [and] that she even told Mr. Quillen that she loved" him. *Id.* He insisted that Breezee "ain't never touched them kids." *Id.*

On appeal from the denial of post-conviction relief, Petitioner argued that trial counsel was ineffective for failing to call Parker as a witness at the trial relating to D.W. (ECF No. 15-32 at 37.) He maintained that "Ms. Parker could have rebutted D.W.'s claim that Petitioner was at home every night," and that, consequently, "the jury would have concluded that D.W. was not a credible witness." (*Id.*) Breezee also argued on appeal that trial counsel should have called Quillen to testify about Petitioner's ex-wife's "infidelity." (*Id.*) He asserted that the testimony would have suggested to the jury that the ex-wife lied about witnessing D.W.'s abuse and that

she instructed her daughters to lie about both incidences of abuse because she "had a motive for getting Petitioner out of the house."  (*Id.* at 38.)

The TCCA found that Petitioner did not pursue, in the court below, his argument that counsel was ineffective for failing to call Parker as a witness.  *Breezee IV*, 2017 WL 1907738, at *5.   Invoking Tennessee Rule of Appellate Procedure 36(a), the court held that Petitioner therefore waived the issue.  *Id.* (citing Tenn. R. App. P. 36(a)).   The court applied the same procedural bar to Petitioner's claim that trial counsel should have called Quillen as a witness.  *Id.* at *6.  The TCCA found that the argument was waived because Petitioner did not raise it in the court below.  *Id.*

 Claim 4B is procedurally defaulted because, as indicated above, the Tennessee waiver rule on which the TCCA relied is an independent and adequate state procedural ground that bars federal habeas review.  *See Hugueley*, 2017 WL 3325008, at *23.  In addition, post-conviction counsel's failure to properly present Claim 4B does not lift the bar because the assertion of trial-counsel-ineffective-assistance is not substantial for purposes of *Martinez*.

Specifically, Petitioner cannot show that there is "some merit" to his claim that trial counsel was ineffective in failing to call Parker and Quillen as witnesses.  As the TCCA pointed out, Quillen's testimony would not have impacted the verdicts because "the victims' mother admitted at the . . . first trial that she 'mess[ed] around' with a registered sex offender in 2007 while the Petitioner was working away from home," but the "jury convicted the Petitioner anyway[.]"  *Id.* at *6.  As for Parker, although she "testified at the hearing that the Petitioner was gone often, she [also] testified that he was home on the day of at least one of the incidents."  *Id.* at *5.  The court further noted that "the trial evidence was overwhelming," suggesting that her testimony would not have made a difference in the trial outcomes.  *Id.*

Accordingly, the because the claim is not substantial, Petitioner has not established cause and prejudice pursuant to *Martinez* to excuse the procedural default.  Claim 4B is **DISMISSED**.

For all of the foregoing reasons, the Petition is **DENIED**.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2)-(3).  A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'"  *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition.  Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a).  However, Rule 24(a) also provides that if the district court certifies that an appeal

would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore **DENIED**.[6]

**IT IS SO ORDERED**.

s/ **S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: December 11, 2020.

---

[6] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.